**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

STANLEY L. NIBLACK,             :
                                :  Civil Action No. 09-428 (RBK)
       Plaintiff,       :
                                :
                                :
       v.               :  **OPINION**
                                :
CHARLES ALBINO, et al.,         :
                                :
       Defendants.      :

**APPEARANCES:**

    STANLEY L. NIBLACK, Plaintiff pro se
    # 923038A/522765
    Northern State Prison (A33E-311B)
    168 Frontage Road, P.O. Box 2300
    Newark, New Jersey 07114

**KUGLER**, District Judge

    Plaintiff, Stanley L. Niblack, a state inmate currently confined at the Northern State Prison in Newark, New Jersey, seeks to bring this action in forma pauperis. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

    At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to

state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the Complaint should be dismissed in part.

## I. BACKGROUND

Plaintiff, Stanley L. Niblack ("Niblack"), brings this civil action against the following defendants: Charles Albino, Administrator of the Southern State Correctional Facility ("SSCF"); George Hayman, Commissioner of the New Jersey Department of Corrections ("NJDOC"); Governor Jon Corzine; Sgt. Lewis; Officer R. Smith; Officer Weinstein; Officer Ott; Officer Labonne; Officer J. Camp; Officer Henry; Nurse Michelle; and Sgt./Lt. John Doe, all employed at the SSCF. (Complaint, Caption, ¶¶ 1-12).

On March 20, 2009, this Court received Niblack's amended Complaint, dated March 17, 2009, naming additional defendants as follows: Grace Rogers, Administrator at Central Reception and Assignment Facility ("CRAF"); Dunlap Pryor, Administrator at CRAF; Larry Glover, Administrator at Northern State Prison ("NSP"); and Robert Paterson, Director, NJDOC Division of Operations. The following factual allegations are taken from the Complaint, and the amended Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of plaintiff's allegations.

In his initial Complaint, Niblack states that he was transferred to SSCF on October 31, 2008, and was incorrectly reclassified with eleven (11) objective scoring points. This alleged error in reclassification has "infringed upon [Niblack's] status" and he wants it to be resolved for parole review. Niblack has submitted grievances to correct the error in his classification but has had no success in remedying the problem. He also states that he submitted grievances concerning work limitations to no avail. It appears that after he submitted his grievances he was moved from Compound "A" to Compound "B" on December 1, 2008.

On December 2, 2008 and December 4, 2008, Niblack complains that defendant Nurse Michelle berated and disrespected him. Also on that date, Officer Henry and Sgt./Lt. John Doe threatened to lock plaintiff up and Officers Weinstein and R. Smith threatened Niblack with physical injury. Niblack states that he tried to speak during these incidents but was told to "shut up."

On December 13, 2008, Officer Ott read Niblack's legal documents during a search of plaintiff's locker. Ott also trashed plaintiff's locker by throwing plaintiff's belongings all over the wing.

On December 14, 2008, Officer Labonne read Niblack's legal mail and questioned plaintiff about it. On December 15, 2008, Niblack was called to perform an outside work detail from which

he has been medically restricted.  Niblack complains that while he was waiting outside, defendant Officer Camps told him that he need to be taken out back and shot like a horse because that's what you do to horses who can't work.  On December 18, 2008, Niblack saw Officer Labonne reading plaintiff's grievances.

Niblack states that he submitted grievances to defendant Albino who told plaintiff that his constant complaining about staff, custody and medical issues makes Niblack a poor candidate for SSCF, and that he probably would be transferred to another facility.  Niblack also wrote to Governor Corzine and NJDOC Commissioner Hayman about his complaints, but did not receive any response.

In Niblack's amended Complaint, he alleges that in September/October 2008, while he was at CRAF, defendants Rogers and Pryor would not give plaintiff points towards his classification score with regard to programs that Niblack had completed.  This alleged inaccuracy as to his classification score affects Niblack's ability to gain parole.  Niblack states that he has sought to correct this error but to no avail.

On January 7, 2009, Niblack was given the same classification score when he was sent to Northern State Prison ("NSP"), but it purportedly was acknowledged that the score would be lower if Niblack had completed the programs.  Niblack filed grievances with defendants Glover and Patterson on numerous

4

occasions to correct the error, but they failed to do so. Niblack now complains that this incorrect classification score affects his status for parole review and that parole has been denied on this basis.

Niblack seeks compensatory, punitive and special damages in excess of $250,000.00.  He also asks that a consent decree be implemented giving prisoners an opportunity to have their grievances taken seriously and appropriately, and that prisoners be given a conference before transfer to another institution, and that classification scores be kept current and accurate.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the

plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2).  "Specific facts are not necessary; the statement

6

need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell v. Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)(quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

The Court of Appeals for the Third Circuit recently provided detailed and highly instructive guidance as to what type of allegations qualify as sufficient to pass muster under the Rule 8 pleading standard. See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir.2008). The Court of Appeals explained, in relevant part:

> [T]he pleading standard can be summed up thus: "stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage [ ]" but ... "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

Id.

However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable);

7

Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

Niblack brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

### IV.  ANALYSIS

A.  Classification Issue

Niblack brings this action to correct his classification score. He claims that he has raised this matter through administrative grievances, but defendants have not corrected his

classification score and status. His allegedly incorrect classification score has caused him to lose parole status.

It is well established that an inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level or security classification or a place of confinement. See Wilkinson v. Austin, 545 U.S. 209, 125 S.Ct. 2384, 2393 (2005); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montayne, 427 U.S. at 243; Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976). Moreover, the custody placement or classification of state prisoners within the State prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." Meachum, 427 U.S. at 225.

Moreover, neither New Jersey law nor New Jersey Department of Correction regulations create a liberty interest in a prisoner's classification within an institution. Under New Jersey law, the custody classification of inmates rests solely within the discretion of the Commissioner of the New Jersey Department of Corrections. See Smith v. New Jersey Dept. of Corrections, 347 N.J. Super. 24, 30 (App. Div. 2001). Moreover, a New Jersey inmate has "[n]o right to reduced custody." N.J.A.C. 10A:9-4.2 ("A reduction in custody status is a privilege and not a right"). When making a decision to reduce an inmate's custody status, "the ICC shall take into consideration all

relevant factors," which may include "[a]ny reason which, in the opinion of the Administrator and the ICC, relates to the best interests of the inmate or the safe, orderly operation of the correctional facility or the safety of the community or public at large." N.J.A.C. 10A:9-5(a)(9). The ICC "shall not be compelled by these criteria to automatically grant a reduction in custody status to every inmate who is eligible for consideration." N.J.A.C. 10A:9-4.5(c). See also N.J.A.C. 10A:9-4.6(e)("ICCs are not obligated to advance an inmate from gang minimum custody status to full minimum custody status even though the inmate qualifies for consideration under the criteria set forth in this section"). See Quirindongo v. Hayman, Civil No. 07-3613 (SDW), 2007 WL 4259657 (D.N.J. Nov. 30, 2007)(finding that plaintiff did not have a constitutionally protected interest in obtaining a reduced custody status).

Thus, "[a]s long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976). It has thus been determined that the transfer of a prisoner from one classification is unprotected by the Due Process Clause even though the change in status involves a significant modification in conditions of confinement. Moody v. Daggett, 429 U.S. 78 (1976).

Accordingly, assuming constitutionally acceptable classification criteria, which is indicated here in the New Jersey regulations, the Supreme Court's statements in Meachum v. Fano, supra, Daggett and Sandin strongly suggest that procedural due process, including the right to a hearing as urged by plaintiff here, need not be afforded to an individual inmate in the ordinary classification case. Niblack's Complaint does not articulate a protected liberty interest with respect to his classification status, as alleged. Therefore, this claim alone, without more, fails to rise to the level of constitutional dimension, and should be dismissed accordingly.

To the extent that Niblack may be asking to restore work and minimum credits for earlier parole or release, and not merely to have a hearing or other administrative review concerning his allegedly erroneous classification score, such a claim would likely be barred by Preiser v. Rodriguez, 411 U.S. 475 (1973),[1] because the relief sought presumes plaintiff's immediate or speedier release from prison and therefore, is not cognizable

---

[1] In Preiser, state prisoners who had been deprived of good-conduct-time credits by the New York State Department of Correctional Services as a result of disciplinary proceedings brought a § 1983 action seeking injunctive relief to compel restoration of the credits, which would have resulted in their immediate release. 411 U.S. at 476. The prisoners did not seek compensatory damages for the loss of their credits. 411 U.S. at 494. The Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." Id. at 500.

under § 1983, but instead, should be raised in a habeas proceeding.

B.  Harassment

Niblack also appears to allege claims of harassment by defendants, Nurse Michelle, Officers Henry, Weinstein, Smith, and Camps, and Sgt./Lt. John Doe.  These defendants verbally "berated," "disrespected," and threatened plaintiff with physical injury on singular occasions in December 2008.[2]

As the United States Supreme Court has stated, "[i]ntentional harassment of even the most hardened criminals cannot be tolerated by a civilized society."  Hudson v. Palmer, 468 U.S. 517, 528 (1984).  The Eighth Amendment protects prisoners against calculated harassment.  Id. at 530.  Generally, however, mere verbal harassment does not give rise to a constitutional violation.  See McBride v. Deer, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001)(taunts and threats are not an Eighth Amendment violation); Oltarzewski v. Ruggiero, 830 F.2d 136 (9th Cir. 1987)(vulgar language); Rivera v. Goord, 119 F. Supp.2d 327, 342 (S.D.N.Y. 2000)(verbal harassment does not violate inmate's constitutional rights); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185 (D.N.J. 1993); Murray v. Woodburn, 809 F. Supp. 383 (E.D.Pa. 1993); Douglas v. Marino, 684 F. Supp. 395 (D.N.J.

---

[2] The verbal threats of harm included locking up plaintiff and saying he should be shot like a horse who can't work. Plaintiff also alleges that these defendants told him to "shut up" when he complained.

12

1988).  Racially discriminatory statements, racial slurs and epithets, without more, also do not establish liability under § 1983.  See Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997) (verbal abuse directed at religious and ethnic background does not state a cognizable constitutional violation); Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985); Shabazz v. Cole, 69 F. Supp.2d 177, 200-01 (D. Mass. 1999)("without even a suggestion of physical injury, [defendants'] verbal abuse and racial epithets, although continuing for a long period of time, fall short of conscience shocking conduct"); Haussman v. Fergus, 894 F. Supp. 142, 149 (S.D.N.Y. 1995); Prisoners' Legal Ass'n, 822 F. Supp. at 187-189 & n. 3 (corrections officer's use of racial slurs did not amount to constitutional violation); Wright v. Santoro, 714 F. Supp. 665, 667 (S.D.N.Y.1989), aff'd, 891 F.2d 278 (2d Cir. 1989); Knop v. Johnson, 667 F. Supp. 467 (W.D. Mich. 1987), appeal dismissed, 841 F.2d 1126 (6th Cir.1988).  Allegations that prison personnel have used threatening language and gestures also are not cognizable claims under § 1983.  Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979)(defendant laughed at prisoner and threatened to hang him).  However, threatening language coupled with the threatening use of a weapon and outrageous conduct by prison personnel may indicate a constitutional deprivation.  Douglas, 684 F. Supp. at 398 (brandishing a butcher knife in close proximity to prisoner and threatening to kill him may amount to a constitutional

13

violation); see also Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992)(gun was put to prisoner's head); Burton v. Livingston, 791 F.2d 97 (8th Cir. 1986)(guard threatened to shoot prisoner).

Here, Niblack reports only verbal harassment insufficient to state a claim under the Eighth Amendment. Therefore, the harassment claims against defendants, Nurse Michelle, Officers Henry, Weinstein, Smith, and Camps, and Sgt./Lt. John Doe, alleging harassment, will be dismissed with prejudice.

C. Retaliation

It also appears that Niblack is asserting a claim that defendants have retaliated against him, in violation of his First and Fourteenth Amendment rights, for filing grievances. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution ... ." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990). To prevail on a retaliation claim, plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist.

14

Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.

Based on the allegations set forth in the Complaint, if true, Niblack may be able to support a claim of retaliation. He alleges that defendants Officer Ott and Officer Labonne read Niblack's legal mail and documents during a search of plaintiff's locker. He also alleges that Labonne read Niblack's grievances, and that Ott trashed plaintiff's locker by throwing plaintiff's belongings all over the wing. Further, Niblack states that he submitted grievances to defendant Albino who told plaintiff that his constant complaining about staff, custody and medical issues makes Niblack a poor candidate for SSCF, and that he probably would be transferred to another facility.

Niblack essentially alleges that he was harassed and transferred in retaliation for filing grievances regarding his classification score. It appears that he also is suggesting that his classification score is in error because of his complaints. In short, Niblack asserts that all of these actions or misconduct by defendants were done in retaliation because plaintiff filed grievances.

A prisoner's ability to file grievances and lawsuits against prison officials is a constitutionally protected activity for purposes of a retaliation claim. See Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981)(retaliation for exercising right

15

to petition for redress of grievances states a cause of action for damages under the constitution); Woods v. Smith, 60 F.3d 1161, 1165 (5th Cir. 1995)(prison officials may not retaliate against an inmate for complaining about a guard's misconduct), cert. denied, 516 U.S. 1084 (1996).  Therefore, because plaintiff alleges that the retaliation was the result of his filing grievances, he appears to meet the requisite elements of a retaliation claim.  Namely, Niblack has alleged (1) a constitutionally protected activity, (2) that he was subjected to adverse action by defendants, such as their harassment and threats, transfers, and allegedly erroneous classification score, and (3) that the filing of grievances was the motivating factor in the defendants' decision to take adverse action against plaintiff.  Accordingly, the Court will allow this claim to proceed at this time, as against defendants, Albino and Officers Ott and Labonne.

D.   Claim Against Governor Corzine and Commissioner Hayman

In his Complaint, Niblack asserts generally that Governor Corzine and NJDOC Commissioner Hayman has "policies, practices, standards and regulations that condone or authorize such abuses to be levied upon prisoners."  He does not allege that these defendants had any direct knowledge or involvement in any of the claims of harassment, retaliation and Niblack's classification score.  Thus, it would appear that this claim against Corzine and Hayman is based on a claim of supervisor liability.

16

Generally, local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

There are no allegations in the Complaint that show defendants Corzine and Hayman had any personal involvement or knowledge of the alleged wrongful conduct by the other defendants against plaintiff. Therefore, the Complaint will be dismissed without prejudice as against defendants, Governor Corzine and Commissioner Hayman, for failure to state a claim at this time.

V.   CONCLUSION

Therefore, for the reasons set forth above, plaintiff's claim asserting harassment in violation of the Eighth Amendment and his claim regarding the erroneous classification score will be dismissed in their entirety, as against all defendants, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Further, the Complaint will be dismissed in its entirety as against defendants, Governor Corzine and Commissioner Hayman, for failure to state a claim at this time.  However, plaintiff's claims of retaliation will be allowed to proceed as against defendants, Charles Albino, Officer Ott, and Officer Labonne. An appropriate order follows.

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

Dated: August 10, 2009