**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| STANLEY L. NIBLACK, | : | Civil No.: 09-428 (RBK) |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | **O P I N I O N** |
|  | : |  |
| MR. CHARLES ALBINO, et al., | : |  |
|  | : |  |
| Defendants. | : |  |

---

**APPEARANCES:**

> STANLEY R. NIBLACK, Plaintiff <u>Pro</u> <u>Se</u>
> #923038A/522765
> Albert M. Bo Robinson
> 377 Enterprise Avenue
> Trenton, New Jersey 08638

> DANIEL MICHAEL VANNELLA, ESQ.
> NEW JERSEY DIVISION OF LAW
> R.J. Hughes Justice Complex
> 25 Market Street, P.O. Box 112
> Trenton, New Jersey 08625
> Counsel for Defendants

**KUGLER,** District Judge

This matter comes before the Court upon the motion of <u>pro</u> <u>se</u> plaintiff, Stanley R. Niblack ("Niblack") for reconsideration of this Court's August 10, 2009 Opinion and Order, which had dismissed several claims and party defendants from the civil rights Complaint and amended Complaint filed by Niblack in this action on January 30, 2009 and March 20, 2009, respectively.

Niblack filed his motion for reconsideration on or about August 24, 2009.  (Docket Entry No. 8).  He later submitted a brief in support of his motion on November 30, 2009 (Docket Entry No. 15).  Defendants did not file any direct opposition to plaintiff's motion.

This motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons stated below, the motion will be denied.

## I.  BACKGROUND

In his initial Complaint and amended Complaint, Niblack named the following defendants: Charles Albino, Administrator of the Southern State Correctional Facility ("SSCF"); George Hayman, Commissioner of the New Jersey Department of Corrections ("NJDOC"); Governor Jon Corzine; Sgt. Lewis; Officer R. Smith; Officer Weinstein; Officer Ott; Officer Labonne; Officer J. Camp; Officer Henry; Nurse Michelle; and Sgt./Lt. John Doe, all employed at the SSCF; Grace Rogers, Administrator at Central Reception and Assignment Facility ("CRAF"); Dunlap Pryor, Administrator at CRAF; Larry Glover, Administrator at Northern State Prison ("NSP"); and Robert Paterson, Director, NJDOC Division of Operations. (see Complaint, Caption, ¶¶ 1-12, and amended Complaint).

The gist of his initial Complaint stemmed from an alleged classification error.  Namely, Niblack states that when he was

2

transferred to SSCF on October 31, 2008, he was incorrectly reclassified with eleven (11) objective scoring points, which has "infringed upon [Niblack's] status" and purportedly affects his parole review. Niblack alleges that he has submitted grievances to correct the error in his classification but has had no success in remedying the problem. He also states that he submitted grievances concerning work limitations to no avail. It appears that after he submitted his grievances he was moved from Compound "A" to Compound "B" on December 1, 2008.

Niblack's amended Complaint also alleges that the classification error continues to affect his parole status/ability to gain parole. In particular, Niblack alleges that, in September/October 2008, while he was at CRAF, defendants Rogers and Pryor would not give him points towards his classification score with regard to programs that Niblack had completed. The same classification error was continued when Niblack was sent to Northern State Prison ("NSP"), but it purportedly was acknowledged that the score would be lower if Niblack had completed the programs. Niblack filed grievances with defendants Glover and Patterson on numerous occasions to correct the error, but they failed to do so.

Niblack's initial Complaint also contained allegations of harassment. For instance, he alleged that defendant Nurse Michelle berated and disrespected him on two occasions, and

defendants, Officer Henry and Sgt./Lt. John Doe, threatened to lock plaintiff up and Officers Weinstein and R. Smith threatened Niblack with physical injury.  Niblack further complained that he tried to speak during these incidents but was told to "shut up." In addition, on December 15, 2008, Niblack, who is medically restricted from outside work detail, alleged that he was harassed by defendant Officer Camps and told that he needed to be "taken out back and shot like a horse because that's what you do to horses who can't work."

Niblack finally alleged claims of retaliation by some defendants for his filing grievances, which the Court construed as a violation of his First Amendment right to petition for redress of grievances.  These claims included allegations that defendant Ott read Niblack's legal documents during a search of plaintiff's locker, and also trashed plaintiff's locker by throwing plaintiff's belongings all over the wing.  Niblack also alleged that Officer Labonne read Niblack's legal mail and grievances.  Further, the Complaint alleged that Niblack submitted grievances to defendant Albino who told plaintiff that his constant complaining about staff, custody and medical issues makes Niblack a poor candidate for SSCF, and that he probably would be transferred to another facility.

In an Opinion and Order filed by this Court on August 10, 2009, this Court dismissed Niblack's claims regarding the

4

classification error and harassment.  The Court also dismissed the Complaint in its entirety as against the defendants, NJDOC Commissioner George Hayman and New Jersey Governor Jon Corzine, on the ground that the theory of respondeat superior is not cognizable in a § 1983 action.  The Court did proceed the claims alleging retaliation in violation of plaintiff's First Amendment right to seek redress of grievances.  The full Opinion and Order are docketed at Docket Entry Nos. 4 and 5, and need not be replicated here for brevity's sake.

Thereafter, Niblack filed a motion for reconsideration of the Court's ruling.  He first argues that the Court overlooked plaintiff's main issue, that prisoners have a clearly established constitutional right to have accurate information in their prison files.  Niblack claims that the inaccuracy of his classification files have had a negative impact on parole consideration.  He refers to a New Jersey state court case, J.D.A. v. New Jersey Dept. Of Corrections, 189 N.J. 413 (2007), which holds that prisoners have a right to accurate information in their medical files.

Next, Niblack seeks reconsideration of this Court's dismissal of his harassment claim, arguing that the Court overlooked the fact that verbal abuse and threats can cause sustained psychological disorders and harm.

Finally, Niblack argues that the Court's dismissal of the Complaint with respect to defendants George Hayman, Commissioner of the NJDOC and Jon Corzine, the Governor of New Jersey, on the basis that there is no respondeat superior liability in § 1983 actions, was in error.  Niblack contends that these defendants had direct knowledge of the incidents and acquiesced in the retaliatory actions of the remaining defendants, because plaintiff had sent letters informing these defendants of the retaliatory actions.

## II.  <u>ANALYSIS</u>

Motions for reconsideration are not expressly recognized in the Federal Rules of Civil Procedure.  <u>United States v. Compaction Sys. Corp.</u>, 88 F. Supp.2d 339, 345 (D.N.J. 1999). Generally, a motion for reconsideration is treated as a motion to alter or amend judgment under Fed.R.Civ.P. 59(e), or as a motion for relief from judgment or order under Fed.R.Civ.P. 60(b).  <u>Id</u>. In the District of New Jersey, Local Civil Rule 7.1(i) governs motions for reconsideration.  <u>Bowers v. Nat'l. Collegiate Athletics Ass'n.</u>, 130 F. Supp.2d 610, 612 (D.N.J. 2001).

Local Civil Rule 7.1(i) permits a party to seek reconsideration by the Court of matters "which [it] believes the Court has overlooked" when it ruled on the motion.  L. Civ. R. 7.1(I); <u>see</u> <u>NL Industries, Inc. v. Commercial Union Insurance</u>, 935 F. Supp. 513, 515 (D.N.J. 1996).  The standard for reargument

6

is high and reconsideration is to be granted only sparingly.  See
United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994).  The
movant has the burden of demonstrating either: "(1) an
intervening change in the controlling law; (2) the availability
of new evidence that was not available when the court [issued its
order]; or (3) the need to correct a clear error of law or fact
or to prevent manifest injustice." Max's Seafood Café v.
Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)(*citing* N. River Ins.
Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).
The Court will grant a motion for reconsideration only where its
prior decision has overlooked a factual or legal issue that may
alter the disposition of the matter.  Compaction Sys. Corp., 88
F. Supp.2d at 345; see also L.Civ.R. 7.1(i).  "The word
'overlooked' is the operative term in the Rule." Bowers, 130 F.
Supp.2d at 612 (citation omitted); see also Compaction Sys.
Corp., 88 F. Supp.2d at 345.

     Ordinarily, a motion for reconsideration may address only
those matters of fact or issues of law which were presented to,
but not considered by, the court in the course of making the
decision at issue.  See SPIRG v. Monsanto Co., 727 F. Supp. 876,
878 (D.N.J.), aff'd, 891 F.2d 283 (3d Cir. 1989).  Thus,
reconsideration is not to be used as a means of expanding the
record to include matters not originally before the court.
Bowers, 130 F. Supp.2d at 613; Resorts Int'l. v. Greate Bay Hotel

and Casino, Inc., 830 F. Supp. 826, 831 & n.3 (D.N.J. 1992);
Egloff v. New Jersey Air National Guard, 684 F. Supp. 1275, 1279
(D.N.J. 1988).  Absent unusual circumstances, a court should
reject new evidence which was not presented when the court made
the contested decision.  See Resorts Int'l, 830 F. Supp. at 831
n.3.  A party seeking to introduce new evidence on
reconsideration bears the burden of first demonstrating that
evidence was unavailable or unknown at the time of the original
hearing.  See Levinson v. Regal Ware, Inc., Civ. No. 89-1298,
1989 WL 205724 at *3 (D.N.J. Dec. 1, 1989).

Moreover, L.Civ.R. 7.1(i) does not allow parties to restate
arguments which the court has already considered.  See G-69 v.
Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990).  Thus, a difference
of opinion with the court's decision should be dealt with through
the normal appellate process.  Bowers, 130 F. Supp.2d at 612
(citations omitted); Florham Park Chevron, Inc. v. Chevron
U.S.A., Inc., 680 F. Supp. 159, 162 (D.N.J. 1988); see also
Chicosky v. Presbyterian Medical Ctr., 979 F. Supp. 316, 318
(D.N.J. 1997); NL Industries, Inc. v. Commercial Union Ins. Co.,
935 F. Supp. 513, 516 (D.N.J. 1996) ("Reconsideration motions ...
may not be used to re-litigate old matters, or to raise arguments
or present evidence that could have been raised prior to the
entry of judgment.").  In other words, "[a] motion for
reconsideration should not provide the parties with an

8

opportunity for a second bite at the apple." <u>Tishcio v. Bontex,
Inc.</u>, 16 F. Supp.2d 511, 533 (D.N.J. 1998)(citation omitted).

Here, Niblack takes issue with this Court's legal
determination of his claims.  First, Niblack argues that
prisoners have a clearly established constitutional right to have
accurate information in their prison files.  He further claims
that the inaccuracy of his classification files have had a
negative impact on parole consideration.  This Court found that
Niblack failed to articulate a protected liberty interest with
respect to his classification status.

To the extent that Niblack argues that the allegedly false
information impacted on his parole consideration, this Court
finds no due process violation.  State and federal courts have
held that a New Jersey inmate has a state-created liberty
interest in the expectancy of release on parole at the time of
parole eligibility, absent the requisite finding that one of the
justifications for deferral exists.  <u>See</u> <u>Greenholltz v. Inmates
of Nebraska Panel and Correctional Complex</u>, 442 U.S. 1, 7-12
(1979); <u>Watson v. DiSabato</u>, 933 F. Supp 390 (D.N.J. 1996); <u>McCray
v. Dietz</u>, 517 F. Supp. 787, 790 (D.N.J. 1980); <u>New Jersey State
Parole Bd. v. Byrne</u>, 93 N.J. 192, 206-08 (1983), <u>Gerardo v. New
Jersey State Parole Bd.</u>, 221 N.J. Super. 442, 446 (App. Div.
1987).  In <u>Greenholtz</u>, the Supreme Court recognized that Nebraska
had created a liberty interest in the expectancy of parole, but

held that Nebraska had provided procedural due process by requiring (1) notice of the parole eligibility hearing, (2) an opportunity for the inmate to appear at the eligibility hearing and present statements and letters on his own behalf, and (3) a statement informing him why parole was denied. Greenholtz, 442 U.S. at 14-16.

In this case, Niblack does not claim that he was denied notice of his eligibility hearing, that he was denied an opportunity to appear at the hearing and present statements and letters on his behalf, or that he did not receive a statement informing him why parole was denied. Instead, Niblack simply states that he has complained about the inaccurate information repeatedly, and the information has not been corrected. He relies on Paine v. Baker, 595 F.2d 197 (4th Circuit), cert. denied, 444 U.S. 595 (1979), which set forth the substantive elements of a "false information" due process claim and the procedures that must be followed to assert it. Id. at 201-02.[1]

_____

[1] But see Johnson v. Rodriguez, 110 F.3d 299, 308 n. 13 (5th Cir.1997)("[A]lthough Paine has not been expressly overruled, subsequent Fourth Circuit cases reflecting [the Fifth Circuit's] view certainly undercut any contention that the Paine analysis is still viable in the circuit which initially formulated it....  Those courts that continue to give lip service to Paine have practically emasculated it by reading its third requirement, that the information be relied upon to a constitutionally significant degree, in tandem with subsequent jurisprudence recognizing that there is no procedural Due Process protection for procedures which are unrelated to a protected liberty interest."  (citations omitted).)

The United States Court of Appeals for the Fourth Circuit held "that in certain limited circumstances a claim of constitutional magnitude is raised where a prisoner alleges (1) that the information is in his file, (2) that the information is false, and (3) that it is relied on to a constitutionally significant degree." Id. at 201.

Paine also set out a procedural prerequisite, namely, that the prisoner make a written request for removal or correction of the inaccurate information before bringing suit.  The Paine court explained the purpose of this requirement was not exhaustion, but jurisdictional.  "State prison authorities cannot be said to have denied an inmate's right to have erroneous information expunged from his file, unless they have been requested to do so and have refused." Paine, 595 F.2d at 202-03.  Here, Niblack attaches his several grievance forms for correction of his classification score to reflect the programs that Niblack has participated in and completed.  Most of these remedy forms post-date the date Niblack filed his Complaint.  Notably, however, Niblack attaches a response which clearly states that Niblack should present his program certificates when he goes to parole.  Consequently, Niblack has not presented evidence to show that the allegedly erroneous information concerning his classification score has not resulted in, nor is it likely to result in, a constitutional deprivation with respect to parole consideration.

11

Next, with respect to his harassment claim, Niblack argues that the Court disregarded psychological harm that a prisoner could suffer from verbal abuse and verbal threats.  It is plain from plaintiff's argument that he simply disagrees with this Court's assessment of his harassment claim, namely that mere verbal harassment does not rise to the level of a constitutional violation.  Moreover, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  As Niblack has not asserted any physical injury, his harassment claim for damages for psychological or emotional harm must be dismissed with prejudice.  See Allah v. Al-Hafeez, 226 F.3d 247, 250-51 (3d Cir. 2000).

Finally, Niblack argues that defendants, Governor Jon Corzine and Commissioner Hayman, should not have been dismissed from the action on the basis of respondeat superior because they had knowledge and acquiesced in the harassment and retaliatory conduct.  He points to three letters he wrote to Commissioner Hayman in December 2008 (dated December 5, 16 and 19, 2008), which were copied to Governor Corzine.  This Court notes that the letters were sent to these defendants after the events that are the subject of this lawsuit.

12

This Court finds that these letters, after-the-fact, do not alter its determination that these defendants should be dismissed from this action because the claims against them are based solely on the theory of <u>respondeat</u> <u>superior</u>.  These defendants cannot be imputed with personal knowledge and acquiescence in the prior alleged conduct solely by virtue of reviewing an inmate grievance.  <u>See</u> <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 (3d Cir. 2004)(holding that, absent a reason to believe that prison doctors are mistreating a prisoner, a non-medical prison official will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference); <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir. 1993)(granting summary judgment to non-medical prison officials whose involvement with prisoner's healthcare was limited to failing to respond to prisoner's letters explaining his predicament); <u>Davila-Bajana v. Sherman</u>, 278 Fed. Appx. 91, 93-94 (3d Cir. 2008).  Furthermore, the letters were acted upon because they were directed to the Director of the Division of Operations for response.  Thus, Niblack's allegations appear to rest on a general claim that these defendants are otherwise responsible for the general care and custody of the prisoners.  This is nothing more than an allegation of supervisor liability, which is not cognizable in a § 1983 action.  <u>See</u> <u>Rizzo v. Goode</u>, 423 U.S. 362, 376 (1976); <u>Davila-Bajana</u>, 278 Fed. Appx. at 93-94.

13

Consequently, Niblack fails to satisfy the threshold for granting a motion for reconsideration.  He has not presented the Court with changes in controlling law, factual issues that were overlooked, newly discovered evidence, or a clear error of law or fact that would necessitate a different ruling in order to prevent a manifest injustice.  Rather, Niblack simply disagrees with this Court's determination that the claims and defendants at issue should be dismissed for failure to state a claim. Therefore, Niblack's only recourse, if he disagrees with this Court's decision, should be via the normal appellate process.  He may not use a motion for reconsideration to re-litigate a matter that has been thoroughly adjudicated by this Court.

### III. <u>CONCLUSION</u>

Therefore, for the reasons expressed above, Niblack's motion for reconsideration (docket entry no. 8) will be denied.  An appropriate Order follows.


s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

Dated: March 24, 2010

14