**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**


STANLEY L. NIBLACK,          :
                            :   Civil Action No. 09-428 (RBK)
         Plaintiff,    :
                            :
                            :
         v.            :   **OPINION**
                            :
MR. CHARLES ALBINO, et al.,   :
                            :
         Defendants.   :


**APPEARANCES:**

     STANLEY L. NIBLACK, Plaintiff pro se
     1403 10TH Avenue
     Neptune, New Jersey, 07753

     DANIEL MICHAEL VANNELLA, ESQ.
     OFFICE OF THE NEW JERSEY ATTORNEY GENERAL
     DIVISION OF LAW
     R.J. Hughes Justice Complex
     25 Market Street, P.O. Box 112
     Trenton, New Jersey 08625
     Counsel for Remaining Defendants, Albino, Ott, Labonne,
         Brooks, Northern State Prison and the New Jersey
         Department of Corrections

**KUGLER**, District Judge

     THIS MATTER comes before the Court on the defendants' motion

for summary judgment, pursuant to Fed.R.Civ.P. 56(c), or in the

alternative, for judgment on the pleadings, pursuant to

Fed.R.Civ.P. 12(c).  (Docket entry no. 106).  Plaintiff filed a

brief in opposition to defendants' motion.  (Docket entry no.

113).  Defendants filed a reply brief.  (Docket entry no. 115).

This matter is being considered on the papers pursuant to

Fed.R.Civ.P. 78.  For the reasons set forth below, defendants'
motion will be granted.

## I.   BACKGROUND

On or about January 30, 2009, plaintiff, Stanley L. Niblack
("Niblack"), filed a civil rights Complaint, pursuant to 42
U.S.C. § 1983, against numerous defendants: Charles Albino,
Administrator of the Southern State Correctional Facility
("SSCF"); George Hayman, Commissioner of the New Jersey
Department of Corrections ("NJDOC"); Governor Jon Corzine; Sgt.
Lewis; Officer R. Smith; Officer Weinstein; Officer Ott; Officer
Labonne; Officer J. Camp; Officer Henry; Nurse Michelle; and
Sgt./Lt. John Doe, all employed at the SSCF.  (Complaint,
Caption, ¶¶ 1-12).  On or about March 20, 2009, Niblack filed an
amended Complaint naming additional defendants as follows: Grace
Rogers, Administrator at Central Reception and Assignment
Facility ("CRAF"); Dunlap Pryor, Administrator at CRAF; Larry
Glover, Administrator at Northern State Prison ("NSP"); and
Robert Paterson, Director, NJDOC Division of Operations.

Niblack essentially brought this action to correct his
prison classification score.  He alleged that the incorrect
classification score had caused him to lose parole status.  This
claim was dismissed in an Opinion and Order issued by this Court
on August 10, 2009.  (Docket entry nos. 4 and 5).  The Complaint
also alleged claims of harassment by defendants Nurse Michelle,

2

Officers Henry, Weinstein, Smith and Camp, and Sgt./Lt. John Doe. The Court found that Niblack's allegations amounted to mere verbal harassment that was insufficient to state a cognizable claim under the Eighth Amendment. Accordingly, the Complaint was dismissed in its entirety as against these defendants, by this Court's August 10, 2009 Opinion and Order. The Complaint also was dismissed as against defendants Governor Corzine and New Jersey Department of Corrections ("NJDOC") Commissioner Hayman, in the same August 10, 2009 Opinion and Order, because there were no allegations to show that these supervisory officials had any personal involvement or knowledge of the alleged wrongful conduct by the other defendants. However, the Court did allow the Complaint to proceed against defendants, Charles Albino, Officer Labonne and Officer Ott with respect to a claim of retaliation. (See August 10, 2009 Opinion, at pp. 14-18, Docket entry no. 4).[1]

On December 22, 2009, the remaining defendants, Albino, Labonne and Ott, filed a motion to partially dismiss the Complaint against them in their official capacities, pursuant to Fed.R.Civ.P. 12(b)(6). (Docket entry no. 16). This Court granted defendants' motion by Opinion and Order entered on September 28, 2010. (Docket entry nos. 83 and 84).

---

[1] Niblack filed a motion for reconsideration of this Court's Opinion and Order. The motion for reconsideration was denied by Opinion and Order dated March 24, 2010. (Docket entry nos. 41 and 42).

3

On January 11, 2010, Niblack filed a supplemental Complaint
(docket entry no. 21), adding defendants, NJDOC Commissioner
George Hayman, Northern State Prison Administrator Larry Glover,
Associate Administrator Bruce Sapp, Business Office Manager Bruce
Brooks, and Business Office Assistant, Rosella Smith, at Northern
State Prison.  Niblack alleges that these defendants wrongfully
deprived him of his protected interest in the money in
plaintiff's prison account by taking more than 20% of the balance
in his prison account to pay his filing fees, as directed by
Court Order, while Niblack was confined at Northern State Prison.
(See Supplemental Complaint, at ¶¶ 13-36, Docket entry no. 21).[2]
The supplemental Complaint incorporated all then existing
retaliation claims previously asserted against defendants Albino,
Labonne and Ott.

On May 11, 2010, defendants filed a motion to partially
dismiss the supplemental Complaint for failure to state a claim.
(Docket entry no. 58).  In an Opinion and Order filed on December
28, 2010, this Court granted defendants' motion.  Namely, the
Court dismissed Niblack's supplemental Complaint, based on

---

[2]   Also on January 11, 2010, Niblack filed a motion for
preliminary injunction.  (Docket entry no. 22).  Niblack sought
immediate injunctive relief to stop the named defendants at
Northern State Prison from deducting more than 20% of plaintiff's
prison account balance to pay his filing fee for this action,
which has prevented plaintiff from obtaining certain hygiene
products, food and other necessities.  (Id.).  This motion was
denied by Opinion and Order of this Court on September 28, 2010.
(Docket entry nos. 85 and 86).

Eleventh Amendment immunity, insofar as it asserted any claims against the individual defendants, Albino, Ott and Labonne, in their official capacities.  The Court also dismissed the supplemental Complaint against defendant Sapp because it was impermissibly based on a claim of supervisor liability.  Finally, plaintiff's Eighth Amendment claim regarding the deprivation of personal hygiene products for two months was dismissed because the allegations failed to rise to the level of a constitutional deprivation.  (See December 28, 2010 Opinion at Docket entry no. 101).

Thereafter, on or about February 15, 2011, the remaining defendants filed this motion for summary judgment, or in the alternative, for judgment on the pleadings.  (Docket entry no. 106).  Defendants assert that any claims remaining against defendant Bruce Brooks in his official capacity and any remaining claims against defendants New Jersey Department of Corrections ("NJDOC") and Northern State Prison ("NSP") should be dismissed with prejudice, on the pleadings, because they are barred by the Eleventh Amendment.

Further, defendants argue that summary judgment should be granted with respect to defendants Albino, Ott and Labonne on the plaintiff's claim that these defendants retaliated against plaintiff.  In addition, defendant Brooks is entitled to summary judgment as to plaintiff's claim that Brooks deprived plaintiff

5

of a constitutionally protected property interest in his inmate trust account funds.  Finally, defendants assert they are entitled to summary judgment on Niblack's claim for compensatory and punitive damages.

Defendants submitted a Statement of Material Facts in support of their motion for summary judgment and judgment on the pleadings.  (Docket entry no. 106-7).  The relevant facts are as follows:  Niblack had been incarcerated at the Southern State Correctional Facility ("SSCF") before and through January 30, 2008.  (Declaration of Mario Viera, an Executive Assistant with the NJDOC, at Ex. D, DOC081-082).  Up until January 2008, Niblack had participated in a Therapeutic Community ("TC") program known as the "Pier Program.  (Viera Decl., Ex. E, DOC186).  However, Niblack had been removed from the Pier Program on January 9, 2008, before completion, "due to overall behavior, being a distraction."  (Id., DOC173).

Although Niblack had not completed the Pier Program, he did receive a "Certificate of Achievement" for his participation. (Declaration of Daniel M. Vannella, DAG, Ex. B, Admissions 16, 22, 23; Viera Decl., Ex. D at DOC083 and Ex. E at DOC186 and 284).  Because Niblack did not complete the program, he could not receive credit for completion on reclassification.  (Viera Decl., Ex. E at DOC184-185, DOC224-226).

Thereafter and through the end of 2008, Niblack submitted numerous grievances through the Inmate Remedy Form ("IRF") system, as well as other written correspondence, challenging his reclassification on the Pier Program issue.  (Declaration of Jeffrey Beebe, Executive Assistant at the NJDOC, Ex. A, at DOC001, 020, 024; and Viera Decl., Ex. E, at DOC223-225).  Niblack continued to challenge his reclassification on the Pier Program issue even after he was transferred to the Northern State Prison ("NSP").  (Viera Decl., Ex. A, at DOC307).  However, as the NJDOC officials had explained to Niblack, because he had a classification score of 11, Niblack's custody status would not have been reduced even with a two-point deduction for successful completion of the Pier Program.  (Viera Decl., Ex. E, at DOC223).  See also N.J.A.C. 10A:9-2.6(a).

From January 2008 to October 2008, Niblack was transferred to various NJDOC correction facilities and halfway houses.  (Viera Decl., Ex D, at DOC 082).  Niblack admitted in his deposition that he had been transferred back and forth between prisons and halfway houses as a result of his "conflict[s]" with staff, "acting belligerent and in a threatening manner."  (Vannella Decl., Ex. A, Plaintiff's Deposition Transcript, dated July 27, 2010, T12:3-19:6).  Niblack was remanded back to the custody of the NJDOC on August 30, 2008, after receiving a disciplinary charge at the Kintock halfway house regarding his

violations of the conditions of community release.  (Viera Decl.,
Ex. D, at DOC081-82).  See also N.J.A.C. 10A:4-4.1(a).  On
October 1, 2008, Niblack was transferred back to SSCF.  (Viera
Decl., Ex. D, at DOC082; Vannella Decl., Ex. A, T21:21-24).

SSCF consists of two compounds: Compound A, which contains
units 1-5; and Compound B, which contains units 7-12.  Unit 6 no
longer exists.  (Vannella Decl., Ex. A, T24:11-18).  In his
deposition, Niblack described the units at SSCF as "basically the
same," with no physical difference other than location, and no
"higher level of security than the other."  (Id., T24:23-25:9).

In October 2008, Niblack was first temporarily assigned to a
cell in unit 2, which he described as a "reception" section for
new inmates.  (Id., T24:11-12; Viera Decl., Ex. D, at DOC082).
Niblack was then transferred to Unit 5, where he remained until
December 1, 2008.  On December 1, 2008, Niblack was transferred
to Unit 7.  (Viera Decl., Ex. D, at DOC082).

In December 2008, defendants Ott and Labonne were housing
officers assigned to unit 7.  Niblack described the housing
officer's duties as "monitor[ing] the unit, the prisoners,
searches, make sure there's no contraband, fights, ...
disruptions on the unit."  (Vannella Decl., Niblack's deposition
at Ex. A, T25:15-26:17).

On December 13, 2008, Niblack stated that Ott read Niblack's
legal material during a cell search, questioned Niblack about it,

and then scattered the material through the unit, making remarks
to Niblack.  (Id., T69:7-73:14).  Niblack admitted that he had
exchanged some words with Ott, including some "of [the] nature"
of "I don't want to hear that shit from you," following which Ott
began "tearing up [Niblack's] area."  (Id., T73:2-9).  Defendant
Ott admits that Niblack had "questioned [Ott] about the search of
his bed area," and, to Ott's recollection, "was very
argumentative and demanding."  (Id., Ex. D, Admission 13).

Niblack also alleges that, on December 18, 2008, defendant
Labonne "was reading my grievances and/or legal mail."  (Vannella
Decl., Ex. A, T75:7-9, Beebe Decl., Ex. A, at DOC032).  Niblack
described Labonne as "an individual who antagonized individuals,
use[d] his little position to harass, [and] abuse[d] authority."
(Vannella Decl., Ex. A, T75:3-7).  Niblack testified at his
deposition that he believed Labonne "probably" committed this act
in retaliation against Niblack, and asserted that Labonne was
liable simply for reading the grievance.  (Id., T75:10-16).  Both
Ott and Labonne admit they searched Niblack's bed area on the two
dates alleged by Niblack.  (Vannella Decl., Ex. D, Admission 5;
Ex. E, Interrogatory 7, Ex. F, Admission 5, Ex. G, Interrogatory
20; Beebe Decl. At Ex. B).

Niblack filed inmate remedy forms ("IRFs") against both Ott
and Labonne.  (Beebe Decl., Ex. A, at DOC027, DOC032).  To each
of these IRFs, SSCF staff responded that the situation was being

investigated.  However, Niblack alleges that the SSCF staff
"failed to investigate and look into promptly to resolve those
issues." (Vannella Decl., Ex. A, T75:25-76:5).  Niblack can
point to no evidence to support his contention, other than his
own belief and the IRFs, both of which state that an
investigation would occur.  (Id.).  An investigation into
Niblack's claims against Ott and Labonne did occur and was
completed one month after Niblack had filed his grievances.
(Beebe Decl., Ex. C).  Niblack had not been interviewed during
the investigation because he already had been transferred to NSP.
(Id., at DOC1258).  Although none of the claims were
substantiated, the area lieutenant was instructed to monitor the
unit more closely, and Ott and Labonne were reminded to maintain
increased professionalism during searches and while maintaining
safety and security.  (Id.).

    Niblack also filed a number of IRFs in December 2008,
following his transfer from Compound A, in which he raised
several different issues.  (Beebe Decl., Ex. A, at DOC023-034).
He admits that he received a staff response to each IRF he filed
that were relevant to the claims asserted in this matter.
(Vannella Decl., Ex. A. T62:22-63:6).  In response to one IRF,
defendant Albino advised Niblack that his "constant complaining
about staff (custody, medical, etc.) [made him] a poor candidate
for [SSCF]'" and that he would be transferred to another

facility.  (Beebe Decl., Ex. A, at DOC025).  Albino advised Niblack, in response to other IRFs, that Niblack's situation would be resolved with a transfer to another facility.  (Id., at DOC026, 028, 029).  In another IRF, Niblack accused Albino of not "want[ing] to hold [staff] accountable for there [sic] abuses + misconduct."  (Id., at DOC033).  Albino responded to this IRF stating that he believed a transfer would be in "everyone's best interests," and that Niblack's "complaints are duly noted and will be given the attention they merit."  (Id.).  In his admission in this matter, Albino admits that he believed Niblack "appeared to need a more structured environment" than SSCF, and that his adjustment to his most recent stay at SSCF was, in his professional opinion, "poor."  (Vannella Decl., Ex. B, Admissions 2, 3).

In his deposition, Niblack stated that he did not believe Albino truly felt that Niblack needed a more structured environment at a different prison, but rather, it was merely an excuse for Albino not to investigate Niblack's accusations against Ott, Labonne and other SSCF staff.  (Vannella Decl., Ex. A, T64:21-65:3).  Niblack further admitted that his own objective was to be transferred back from Compound B to Compound A because he believed "the officers on Compound B" were "extremely biased, prejudicial and racist."  (Id., T66:3-67:14).  Niblack was housed

11

in Compound B for a total of 26 days.  (Viera Decl., Ex. D, at
DOC082).

All of Niblack's claims against SSCF officials raised in his
IRFs were investigated during a subsequent investigation by the
NJDOC's Special Investigations Division ("SID"), which included a
personal interview of Niblack.  (Roemer Decl., Ex. A).

Niblack admitted that he suffered no physical injury from
any actions taken by Albino, Ott or Labonne.  However, Niblack
states that he suffered "psychological difficulties" such as
occasional difficulty in sleeping, but no chronic problems.
(Vannella Decl., Ex. A, T80:21-81:12, 83:9-84:24).

Niblack was transferred to NSP in late December 2008.
(Vannela Decl., Ex. A, T85:19-20).  Niblack filed his initial
Complaint against Albino, Ott and Labonne on or about January 30,
2009.  (Docket entry no. 1).  On August 10, 2009, this Court
issued an Order allowing some of Niblack's claims to proceed and
directing the NSP to collect Niblack's $350.00 filing fee.
(Docket entry no. 5).  From late-December 2008 through 2009,
defendant Bruce Brooks was the Business manager at NSP.  (Brooks
Decl., at ¶ 1).  From October 14 to December 11, 2009, on five
occasions, portions of the filing fee obligations were withdrawn
from Niblack's prison account at a higher rate than that directed
by this Court, "the result of a clerical error."  (Brooks Decl.,
at ¶¶ 3-9).  The clerical error was explained as an entry error

into the computer system, whereby the August 10, 2009 Order was imputed mistakenly as a "PLRAS" or "State Litigation Filing Fee," as opposed to a "PLRA," or "Federal Litigation Filing Fee" obligation.  (Vannella Decl., Ex. I, Interrogatory 25; Viera Decl., Ex. B, at DOC1189-1190).

Upon realization of the clerical mistake, on January 27, 2010, the PLRAS obligation was suspended, the money withdrawn from Niblack's prison account for the PLRAS obligation was reimbursed, and the amount began to be collected again as a "PLRA" obligation pursuant to the August 10, 2009 Order.  (Brooks Decl., Ex. A, ¶¶ 9-12).  Niblack disputes that the withdrawal was made in error and contends that it was intentional.  (Vannella Decl., Ex. A, T106:19-115:12).

Niblack stated in his deposition that, during the time the money was withdrawn from his prison account at the higher rate, (1) he was not provided free hygiene materials, although he admitted that he never applied for indigency status that would have granted him such materials, and that he never went without a particular item for more than a week or two; (2) that he was able to pay for postage, mail, and "what [he] chose to spend [his money] on"; and (3) he was not able to buy the food he wanted, which he stated he had to do because the food provided at NSP fo free was "not edible for me."  (Vannella Decl., Ex. A, T125:4-138:25).  Cf. N.J.A.C. 10A:1-2.2; N.J.A.C. 10A:14-2.3(b).  Further, Niblack's prison account from 2009 shows that he

periodically had been loaned money through funds of the various prisons in which he resided, under such titles as "Medical Loan," "Legal Copy Loan," "Legal Mail Loan," "Commissary Loan," and "Pharmacy Loan." (Viera Decl., Ex. B). Niblack received certain of these loans from October 2009 to December 2009. (Id., at DOC1197).

Niblack stated in his deposition that he did not know for sure whether Brooks was the specific individual who entered court orders and financial obligations into prison accounts when they are first received. His information was based on what he was told by a social worker who had called the business office on Niblack's behalf. (Vannella Decl., Ex. A, T102:1-103:8).

Niblack filed a number of IRFs during 2009 while confined at NSP. (Viera decl., Ex. A, DOC035-075). Niblack states that NSP is "[run] poorly, extremely poorly. Worse prison in the State of New Jersey." (Vannella Decl., Ex. A., T130:20-131:3). Niblack also described Kintock halfway house as having: "Extremely deplorable conditions. Horrendous atmosphere for individuals seeking some type of rehabilitation or recovery to be in." (Id., T19:23-20:2). In general, Niblack gave his impression of the NJDOC as follows:

> Conditions of confinement period. How broad that can be, where ever you can take that.... [L]aw library, condition of buildings, dental, medical, diet mills, nurses on staff. I mean, almost any gambit or anything that you can possibly think of because the prisons and halfway houses across the State of New Jersey are horrendous.

(Id., T148:5-13).

14

During his deposition, Niblack stated that "[e]verywhere I go, I write tons of grievances." (Id., T119:3-15). He further stated that, rather than have to go back to pick "one, two out of the box" that is "out at all times," he would simply "keep about 30 [IRFs]" on his person. (Id., T32:12-19).

Niblack also stated that he "absolutely" understood what was meant by filing a notice of tort claim with the State, and that he did not do so in this matter. (Id., T146:24-147:15).

On March 4, 2011, Niblack filed a brief in opposition to defendants' motion, together with a "Statement of Genuine Issues of Material Facts." (Docket entry no. 113). In ¶¶ 3-7 of his Statement of Genuine Issues of Material Facts, Niblack simply repeats his general claims against the defendants and refers to his own letters and grievances as exhibits thereto. In ¶ 8, Niblack states that defendants never produced any search logs or records of an investigation at the time of the incidents by SSCF officials during the discovery process. In ¶ 9, Niblack refers to Albino's answers to admissions regarding the reason for Niblack's transfer from SSCF.

Niblack also states that he sought to file criminal charges against defendants, and to this purpose sent a letter to the Cumberland County Prosecutor's Office. He received a letter from the Cumberland County Prosecutor's Office informing plaintiff that the matter was referred to the NJDOC for an investigation by the SID. (¶ 10 and Plaintiff's Ex. D).

In ¶ 11, Niblack states that complaints by other inmates were lodged against Labonne and Ott concerning their abuses, harassment and retaliatory conduct.  He refers to his Exhibit E, which includes the SID investigation, the actual, redacted grievances (concerning singular incidents on December 13, 2008 (Niblack), and December 14, 22 and 28 for four other inmates in Unit 7, and the responses of Labonne and Ott during the investigation.

In ¶ 12, Niblack contends that defendants Ott and Labonne were untruthful in their legal responses to interrogatories and/or admissions.  In ¶ 13, Niblack claims that the defendants' statement that Niblack did not complete the Pier Program is untruthful, and provides a copy of his certificate of achievement for the first phase only of the Pier Program.  (Pl. Ex. G).

In ¶ 14, Niblack characterizes Albino's answers to his admissions as untruthful.  In ¶ 15, Niblack takes issue with the search log produced because it reflects no particular inmate area by name being searched.  (Pl. Ex. I).  Niblack states that neither Brooks nor Bruce Sapp[3] produced a court order stating that 100% of funds can be removed from Niblack's account to pay for filing fees.  (¶ 16).  Niblack alleges that he was deprived of personal hygiene products and other basic necessities in

---

[3]  Sapp was dismissed from this action in this Court's December 28, 2010 Opinion and Order.  (Docket entry nos. 101, 102).

October and November 2009.  He provides IRFs to support his allegation.  (¶ 17 and Pl. Ex. K).

Niblack states that there are no statutes that expressly authorize the taking of 100% of funds from inmate accounts for filing fees.  He attaches a copy of the state PLRA statute.  (¶ 18, Pl. Ex. L).  He complains that defendants never responded to his grievances concerning the money deducted from his inmate account or his requests for personal hygiene and other necessities.  Niblack states that his indigent package request was ignored, although it was clearly received by defendants.  (¶¶ 19, 21 and Pl. Ex. N).  Niblack disputes defendants' answers to admissions that Niblack was not indigent.  (¶ 22).

Niblack also disputes the legal answers to admissions by Sapp and Brooks regarding the funds removed from Niblack's prison account.  (¶¶ 23-25).

On March 14, 2011, defendants filed a reply in support of their motion for summary judgment.  (Docket entry no. 115).  First, defendants note that Niblack did not comply with Local Rule 56.1(a).[4]  Next, defendants argue that Niblack has falsely accused defendants of failure to comply with the Rules of Discovery by not disclosing certain written discovery, namely, a

---

[4] Local Rule 56.1(a) provides, in pertinent part, that "[t]he opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits or other documents submitted in connection with the motion..."

SSCF investigation report dated January 15, 2009 and SSCF search logs from December 2008, until submission of defendants' motion for summary judgment.  Defendants state that these documents were sent to plaintiff on December 21, 2010, and delivered to Niblack's front porch on December 23, 2010.  (2d Vannella Decl., at ¶¶ 4-6, Exs. A-C).

In addition, defendants argue that Niblack attempts to rely on old answers to interrogatories and requests for admissions, which had been amended and supplanted defendants' old answers before November 15, 2010, are improper and for the most part, Niblack's challenges to defendants' credibility are not logical or supported by any evidence.

Further, defendants argue that Niblack's submission of two witness declarations should not be considered because they contain inadmissible evidence and do not establish that the declarants had any personal knowledge of the incidents. Moreover, the declarations tend to support that defendants did, in fact, conduct an investigation, which flatly contradicts Niblack's repeated assertions that his grievances at SSCF were ignored.

## II. <u>DISCUSSION</u>

### A. <u>Judgment on the Pleadings Standard</u>

Under <u>Fed.R.Civ.P.</u> 12(c), a court will grant judgment on the pleadings if, on the basis of the pleadings, no material issue of fact remains and the movant is entitled to judgment as a matter

of law.  See Fed.R.Civ.P. 12(c); DiCarlo v. St. Mary Hosp., 530
F.3d 255, 259 (3d Cir. 2008).  The standard governing a Rule
12(c) motion is the same as the one governing motions to dismiss
under Rule 12(b)(6).  See Spruill v. Gillis, 372 F.3d 218, 223 n.
2 (3d Cir. 2004).  The Court must accept the nonmoving party's
well-pleaded factual allegations as true and construe those
allegations in the light most favorable to the nonmoving party,
but the Court will disregard any unsupported conclusory
statements.  See DiCarlo, at 262-63.

     For a complaint to survive dismissal under Rule 12(b)(6), it
"must contain sufficient factual matter, accepted as true, to
'state a claim to relief that is plausible on its face.'"
Ashcroft v. Iqbal, __U.S.__, 129 S.Ct. 1937, 1949, 173 L.Ed.2d
868 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570,
127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  In determining the
sufficiency of a complaint, the Court must accept all well-
pleaded factual allegations in the complaint as true and draw all
reasonable inferences in favor of the non-moving party.  See
Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir.
2008).  But, "the tenet that a court must accept as true all of
the allegations contained in a complaint is inapplicable to legal
conclusions [;][t]hreadbare recitals of the elements of a cause
of action, supported by mere conclusory statements, do not
suffice."  Iqbal, 129 S.Ct. at 1949.  Additionally, in evaluating
a plaintiff's claims, generally "a court looks only to the facts

alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

B.  Summary Judgment Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1219, n. 3 (3d Cir. 1988), cert. denied, 490 U.S. 1098 (1989); Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)(noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir. 1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).  The rule does not increase or decrease a party's ultimate burden of proof on a claim.  Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case."  Anderson, 477 U.S. at 255.

Under the Rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the nonmoving party has provided evidence to show that a question of material fact remains.  See Celotex, 477 U.S. at 324.  Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented ... by depositions, answers to interrogatories, or further affidavits," id. at 322 n. 3, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations omitted); see also Anderson, 477 U.S. at 247-48 (stating that "[b]y its very terms, this standard provides

that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.").

What the nonmoving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; see also Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990)(stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint ... with conclusory allegations of an affidavit."); Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993)(stating that "[t]o raise a genuine issue of material fact, ... the opponent need not match, item for item, each piece of evidence proffered by the movant," but must "exceed[ ] the 'mere scintilla' threshold and ... offer[ ] a genuine issue of material fact.").

The Local Civil Rules supplement the Federal Rules of Civil Procedure and provide that "each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." L. Civ. R. 56.1. "Where possible, a single joint Rule 56.1 statement is favored." Allyn Z. Lite, New Jersey Federal Practice Rules 192 (2006 ed.) (citations omitted).

"Where a joint statement is not prepared, then, under the rule, 'facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted.'"  <u>Id</u>. at 193 (citations omitted).  However, "the parties' statements pursuant to Local Rule 56.1 "cannot bind the Court if other evidence establishes that the stipulated facts are in error." <u>Id</u>. (citation omitted).

B.  <u>Eleventh Amendment Immunity</u>

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute.  <u>See</u>, <u>e.g.</u>, <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974).  The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought.  <u>Pennhurst State School and Hospital v. Halderman</u>, 465 U.S. 89, 100 (1984). Thus, based on the doctrine of sovereign immunity, states cannot be sued in federal court, unless Congress has abrogated that

immunity or the State has waived it.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989).

Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  This immunity extends to state agents or officials when the "action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to sovereign immunity from suit even though individual officials are nominal defendants."  Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 431 (1997).  Section 1983 does not override a state's Eleventh Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).  Therefore, "[a]s a matter of law, suits against individuals acting in their official capacities are barred by the Eleventh Amendment."  Holland v. Taylor, 604 F. Supp.2d 692, 699 (D. Del.  2009).  See also Davis v. New York, 316 F.3d 93, 101 (2d Cir. 2002).

Here, the Fourteenth Amendment deprivation of property claim directed against defendant Brooks in his official capacity is essentially one against the state, since Brooks is alleged to have acted in his official capacity when withdrawing the filing fee obligation from Niblack's prison account at a higher rate than authorized by court order, or by directing another person to do so, while Niblack was confined at Northern State Prison.[5]

_____

[5]  The Court notes that Niblack still attempts to hold defendant Bruce Sapp liable in this matter.  (See Pl. Brief in

Likewise, any claims that may be construed against the NJDOC or NSP are barred by the Eleventh Amendment. Further, there is no indication here that either abrogation or waiver is applicable to Niblack's claims. Therefore, sovereign immunity works to bar the federal claims in this suit against defendant Brooks in his official capacity, and as against defendants NJDOC and NSP. Title 28 U.S.C. § 1915(e)(2)(B)(iii) requires this Court to dismiss the claims if they "seek[ ] monetary relief from a defendant who is immune from such relief."

Beyond sovereign immunity, the § 1983 Complaint is invalid against the defendants Brooks, NJDOC and NSP, because these defendants, in their official capacities, are not "persons" under § 1983. See Quern v. Jordan, 440 U.S. 332, 345 (1979)("[A] state is not a 'person' for purposes of 42 U.S.C. § 1983."); Hafer v. Melo, 502 U.S. 21, 25 (1991)("Suits against state officials in their official capacity ... should be treated as suits against the state."). See Hussein v. New Jersey, Civil No. 09-1291 (JBS), 2010 WL 376609, at *4 (Jan. 26, 2010) (dismissing a Section 1983 claim against the State of New Jersey and Corzine as the state and state officials in their official capacities are not persons for Section 1983 purposes).

---

Opposition, Docket entry no. 113, at Point II). However, Sapp was dismissed from this action, as plaintiff's claims against Sapp were impermissibly based on a theory of respondeat superior. See Court's December 28, 2010 Opinion and Order at Docket entry nos. 101 and 102.

Therefore, the Court will grant defendants' motion for judgment on the pleadings, and will dismiss with prejudice the supplemental Complaint against the defendants, NJDOC, NSP and Brooks in his official capacity, pursuant to Fed.R.Civ.P. 12(b)(6).

C.   Retaliation Claim Against Defendants Albino, Ott and Labonne

Niblack makes three separate claims of retaliation against defendants Albino, Ott and Labonne.  First, as to Albino, Niblack argues that Albino unconstitutionally authorized Niblack's transfer from SSCF in response to Niblack's many grievances filed against SSCF officials, for the retaliatory purpose of punishing plaintiff while protecting the SSCF officials from investigation. Niblack next contends that Ott retaliated against plaintiff for filing grievances, when on December 13, 2008, Ott allegedly trashed Niblack's cell and read his legal materials.  Niblack's single allegation against Labonne is based on Labonne having read Niblack's grievances on December 18, 2008.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution ... ."  White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990).  To prevail on a retaliation claim, plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected

activity was a substantial or motivating factor in the state actor's decision to take adverse action. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.

As to the first factor, defendants concede that the filing of grievances is a constitutionally protected activity. See Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d cir. 1981). As to the second factor, "a prisoner-plaintiff satisfies [the "adverse action"] requirement by demonstrating that the action 'was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights.'" Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)(quoting Allah v. Seiverling, 229 F.3d at 225). Determination of this second factor is a fact-sensitive analysis. Allah, supra.

Finally, as to the third factor, plaintiff has the initial burden of showing that his conduct "was 'a substantial or motivating factor'" in the adverse action. Rauser, 241 F.3d at 333 (importing a burden-shifting framework into the prisoner-retaliation context for proof of a "causal link between exercise of [an inmate's] constitutional rights and the adverse action taken against him"). To establish this requisite causal connection for a First Amendment retaliation claim, the plaintiff

must prove one of two things: "(1) an unusually suggestive proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link." DeFranco v. Wolfe, 387 Fed. Appx. 147, 154 (3d cir., July 14, 2010)(citing Lauren W. Ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)).  If neither of these showings is made, then plaintiff must show that, from the evidence in the record as a whole, the trier of fact should infer causation.  Id.

The burden then shifts to the defendant, who must "prove by a preponderance of the evidence that it would have taken the same ... action even in the absence of the protected activity." Rauser, 241 F.3d at 334.  This is a "deferential standard" meant to take into account "that the task of prison administration is difficult, and that courts should afford deference to decisions made by prison officials ... who possess the necessary expertise." Id.  "[R]easons reasonably related to a legitimate penological interest" are a sufficient basis for defendants to have taken the action against the inmate. Id., 241 F.3d at 334 (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).  Maintaining prison safety and security is a fundamental, legitimate penological interest. See, e.g., Jones v. Brown, 461 F.3d 353, 361-62 (3d Cir. 2006).

1. *Claim Against Ott*

As stated above, Niblack's claim against Ott is limited to one incident, on December 13, 2008, during a cell search, where

Ott read Niblack's legal materials and scattered his property through the unit, making remarks to Niblack.  Ott admits that Niblack had questioned Ott about the search of his bed area and that Niblack was "very argumentative and demanding."  (Vannella Decl., Ex. D, Admission 13).  Niblack likewise admits that he exchanged words with Ott, including foul language, at the time of the search.  (Vannella ecl., Ex. A, T73:2-9).

Further, independent investigations of the incident were conducted in December 2008/January 2009, and neither investigation substantiated Niblack's claims against Ott. Accordingly, the record contains no evidence, other than Niblack's self-serving statements, that Ott acted in an unconstitutionally retaliatory manner against Niblack on December 13, 2008.

Based on the evidence submitted, this Court finds that Niblack cannot demonstrate the third factor, namely, that Niblack's filing of grievances was a substantial or motivating factor in Ott's cell search or conduct during the search where plaintiff's cell was allegedly "trashed."  Rather, both parties admit that Niblack's argumentative behavior and use of foul language at the time of the seacrh escalated Ott's conduct. There was no suggestion that the search and the manner of the search was performed in response to Niblack's filing of grievances.  Moreover, Niblack cannot show satisfaction of the second factor, that he was deterred in any way from filing

grievances, and, in fact, Niblack immediately filed a grievance against Ott after the incident occurred.

Accordingly, summary judgment will be granted in favor of defendant Ott, with respect to the retaliation claim, and this action will be dismissed with prejudice, in its entirety, as against defendant Ott.

2.  *Claim Against Labonne*

Again, Niblack retaliation claim with respect to Labonne is based on a single incident.  On December 18, 2008, Niblack alleges that Labonne read plaintiff's grievances and/or legal mail.  The matter was investigated and Niblack's claim against Labonne was not substantiated.  Niblack admitted in his deposition that Labonne may not have been acting in a retaliatory manner on December 18, 2008.  (Vannella Decl., Ex. A, T75:10-16). However, Niblack contends that Labonne is liable to him simply for reading the grievance.[6]

Evidence of this single incident of reading a grievance does not rise to the level of adverse action sufficient to deter a person of ordinary firmness from exercising his rights protected by the First and Fourteenth Amendments, as required for a state

---

[6]  In <u>Jones v. Brown</u>, 461 F.3d 353, 359-64 (3d Cir. 2006), the United States Court of Appeals for the Third Circuit held that a pattern and practice of opening legal mail outside the inmate's presence impinges on the inmate's First and Fourteenth Amendment rights independent of whether the inmate can show any consequential injury stemming from that violation, other than the violation itself.  Nevertheless, a single, isolated incident such as alleged here by Niblack does not show a pattern or practice of opening legal mail sufficient to show a First Amendment violation.

inmate's claim of retaliation under § 1983.  See Burgos v.
Canino, 358 Fed. Appx. 302, 307 (3d Cir. 2009)(urinalysis,
harassment, threats, temporary inconveniences, and denial of
recreation did not rise to level of adverse action against
prisoner); Couch v. Bd. of Trustees of Memorial Hosp. of Carbon
County, 587 F.3d 1223, 1243 (10th Cir. 2009)("An investigation of
potential misconduct ... will generally not constitute an adverse
employment action"); Bridges v. Gilbert, 557 F.3d 541, 555 (7th
Cir.2009)("single retaliatory charge that is later dismissed is
insufficient to serve as the basis of a § 1983 action"); Starr v.
Dube, 334 Fed. Appx. 341, 342-43 (1st Cir. 2009)(retaliatory
filing of disciplinary charge that was dismissed one week later
does not constitute adverse action); Walker v. Bowersox, 526 F.3d
1186, 1190 (8th Cir. 2008)("the two incidents when Knarr directed
others to give Walker an alternative meal, although purportedly
retaliatory, were not sufficiently severe to amount to a
constitutional violation"); Morris v. Powell, 449 F.3d 682,
685-86 (5th Cir.)(prisoners retaliatory job reassignment from the
commissary to the kitchen for one week, with one day spent in the
unpleasant pot room, was not sufficiently adverse to satisfy
adverse action requirement because acts that cause only a "few
days of discomfort," impose "a minor sanction" or an otherwise
constitutional restriction on inmate are not sufficiently
adverse), cert. denied, 549 U.S. 1038 (2006); Ingram v. Jewell,
94 Fed. Appx. 271, 273 (6th Cir. 2004)(neither loss of an
extension cord, the cost of the cord, nor 14 days of lost

privileges constitutes adverse action that would deter a prisoner
of ordinary firmness from filing grievances); Gill v. Tuttle, 93
Fed. Appx. 301, 303-04 (2d Cir. 2004)(to establish retaliation
claim, inmate must allege adverse action that imposes a
substantial impact on inmate); Smith v. Yarrow, 78 Fed. Appx.
529, 541 (6th Cir. 2003)("An isolated incident such as this is
not likely to deter a p[risoner] of ordinary firmness from
pressing on with his lawsuit"); Jones v. Greninger, 188 F.3d 322,
325-26 (5th Cir. 1999)(although retaliatory intent was properly
alleged, claim that inmate was restricted to five hours per week
in law library in retaliation for filing grievances failed
because the alleged adverse acts did not rise to level of
constitutional claim); Thaddeus-X v. Blatter, 175 F.3d 378, 398
(6th Cir. 1999)("Prisoners may be required to tolerate more than
public employees, who may be required to tolerate more than
average citizens, before an action taken against them is
considered adverse").  See also Potter v. Fraser, 2011 WL
2446642, *8 (D.N.J.  June 13, 2011)(finding that plaintiff's
allegations that certain defendants searched his cell on two
occasions, threw his t-shirt in the garbage, and confiscated his
commissary purchases, in retaliation for filing grievances, were
not sufficiently adverse actions).

Moreover, it is plain from the fact that Niblack filed a
grievance against Labonne, and from the number of grievances that
Niblack filed after the December incident that Niblack was not

deterred in any way from pursuing his protected constitutional activity.

Accordingly, summary judgment will be granted in favor of defendant Labonne, with respect to the retaliation claim, and this action will be dismissed with prejudice, in its entirety, as against defendant Labonne.

3.  *Claim Against Albino*

Finally, Niblack contends that Albino's transfer of Niblack from SSCF to NSP was an unconstitutional retaliatory act against Niblack for filing grievances.  Niblack points to Albino's responses to some of plaintiff's IRFs in which Albino states that Niblack's "constant complaining about staff (custody, medical, etc.) [made him] a poor candidate for [SSCF]" and that Niblack would be transferred to another facility.  (Beebe Decl., Ex. A, at DOC025; see also DOC026, DOC028, DOC029).  In another IRF, in which Niblack accused Albino of not wanting to hold staff accountable for abuses and misconduct, Albino responded that he believed Niblack's transfer would be in "everyone's best interests,' and that Niblack's "complaints are duly noted and will be given the attention they merit."  (Id., at DOC033).  Further, in his answers to requests for admissions, Albino admits that Niblack "appeared to need a more structured environment" than SSCF, and that Niblack's adjustment at SSCF was "poor." (Vannella Decl., Ex. B, Admissions 2 and 3).

Niblack contends that Albino's admissions amply demonstrate that Niblack's transfer from SSCF to NSP was motivated "in

substantial part by a desire to punish [Niblack] for the exercise of a constitutional right." Allah, 229 F.3d at 224.  He further argues that his transfer was meant to "punish" him so that his grievances against SSCF officials could be ignored.

On the other hand, defendant argues that the transfer was neither adverse nor retaliatory, and that the transfer was made for reasons reasonably related to a legitimate penological interest.  See Alexander v. Fitch, 396 Fed. Appx. 867, 871-72 (3d Cir. 2010).  Moreover, even Niblack admits that it was his goal to be transferred from Compound B, although his preference was to be transferred to Compound A at SSCF rather than to another prison facility altogether.  Finally, defendant contends that Niblack's grievances were investigated despite Niblack's assertion otherwise, and there is no evidence to show that Niblack's transfer to NSP caused Niblack to suffer any real restrictions, as illustrated in Allah, supra, despite the fact that NSP may have been a "more structured environment."

Clearly, Niblack has demonstrated a causal connection between Niblack's filing of grievances and his eventual transfer from SSCF.  Nevertheless, the Court finds that there is ample evidence to show that the transfer was not "adverse" so as to deter Niblack from exercising his first Amendment rights in filing grievances.

First, other than Niblack's subjective characterization of NSP as the "[w]orse prison in the State of New Jersey,"[7] (Vannella Decl., Ex. A, T130:20-131:3), there is no evidence to show that the transfer to NSP imposed a significant hardship or harsh restrictions on Niblack to the extent demonstrated by the plaintiff in <u>Allah</u>.  In addition, the evidence contradicts Niblack's assertion that the transfer was a punishment or retaliation so as to avoid investigation of Niblack's grievances, because investigations of the grievances were conducted, first by the SSCF captain and then by the SID.

Most significantly, the transfer or expectation of a transfer did nothing to deter Niblack from filing more grievances.  Niblack boasted that "[e]verywhere I go, I write tons of grievances."  (Vanella Decl., Ex. A, T119:3-15).  The record shows that Niblack freely submitted grievances at SSCF in 2008 to directly communicate his displeasure with Albino, and Niblack was in no way deterred from filing more grievances while at NSP in 2009 after his transfer from SSCF.  Moreover, Niblack admitted that his objective in filing grievances was to effect a transfer from Compound B in SSCF, where he believed the officers to be biased and racists.  (Vannella Decl., Ex. A, T66:3-67:14).

Finally, the evidence submitted clearly demonstrates that Albino's decision to transfer Niblack from SSCF was not meant to

---

[7]  Niblack likewise rated the Kintock halfway house as "deplorable" and his overall impression of the NJDOC prison facilities was "horrendous."  (Vannella Decl., Ex. A, T19:23-20:2 and 148:5-13).

silence or punish Niblack, but instead was made for reasons reasonably related to a legitimate penological interest. Based on the number of grievances filed, it was apparent to Albino that Niblack was creating a serious conflict with staff throughout SSCF and, in particular, Compound B. Niblack indicated his desire to be transferred, as mentioned above, although it is obvious that he preferred to have a choice in where he was to be moved, and he continued to submit grievances after Albino had responded to an earlier grievance that a transfer would be appropriate. Thus, Albino had determined, based on Niblack's stated displeasure with his environment and the conflicts occurring with staff, that Niblack's adjustment at SSCF was "poor" and that a more structured prison environment would be in plaintiff's best interest and the best interest of everyone involved for the purpose of maintaining safety and security for all. As already noted, courts should "recognize that the task of prison administration is difficult, and [courts thus] should afford deference to decisions made by prison officials ... who possess the necessary expertise." Rauser, 241 F.3d at 334. In other words, there is sufficient uncontroverted evidence in this case to show that Niblack's transfer to NSP occurred due to his poor prison adjustment at SSCF, demonstrating that Albino had a legitimate penological reason for the transfer. See Fortune v. Hamberger, 379 Fed. Appx. 116, 121-22 (3d Cir. May 7, 2010).

Consequently, based on the facts and evidence presented in this case, the Court will defer to Albino's decision to transfer

Niblack from SSCF to NSP because it served the legitimate
penological interest in a functioning grievance system free from
any taint-perceived or real.  See DeFranco, 387 Fed. Appx. At
157-58 (citing Ward v. Dyke, 58 F.3d 271, 274 (6th Cir. 1995),
which held that the transfer of an inmate was not retaliatory
because it had the salutary effect of "reducing the tension
between the staff and [the inmate] without discouraging [the
inmate] from seeking redress of his grievances"), cert. denied,
516 U.S. 991 (1995).  The record clearly establishes ample non-
retaliatory justification for the transfer, and demonstrates that
the second and third factor of the Rauser analysis weighs
strongly in favor of defendant Albino, and against Niblack.
Accordingly, summary judgment on this claim will be granted in
favor of defendant Albino.

D.  Claim Against Defendant Brooks

    Niblack asserts that defendant Bruce Brooks deprived
plaintiff of a constitutionally protected property interest when
Brooks deducted funds from Niblack's prison account in excess of
this Court's August 10, 2009 Order.

    The Fourteenth Amendment provides, in pertinent part here,
that the State may not "deprive any person of life, liberty, or
property, without due process of law[.]"  The "due process of
law" essentially requires that the government provide a person
notice and opportunity to be heard in connection with the
deprivation of life, liberty or property.  Zappan v. Pennsylvania
Board of Probation and Parole, 152 Fed. Appx. 211, 220 (3d Cir.

2005)("The essential requirements of any procedural due process claim are notice and the opportunity to be heard."). Hence, to establish a prima facie case of a procedural due process violation, a plaintiff must establish: (1) a deprivation of a constitutionally protected liberty or property interest, (2) state action, and (3) constitutionally inadequate process. See Rusnak v. Williams, 44 Fed. Appx. 555, 558 (3d Cir. 2002) ("Procedural due process claims, to be valid, must allege state sponsored-deprivation of a protected interest in life, liberty or property. If such an interest has been or will be deprived, procedural due process requires that the governmental unit provide the individual with notice and a reasonable opportunity to be heard.")(citation omitted).

To have a property interest, Niblack must demonstrate "more than an abstract need or desire for it. ... He must, instead, have a legitimate claim of entitlement to it" under state or federal law. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). For present purposes, a procedural due process analysis involves a two step inquiry: the first question to be asked is whether the complaining party has a protected liberty or property interest within the contemplation of the Due Process clause of which he has been deprived and, if so, the second question is whether the process afforded the complaining party to deprive him of that interest comported with constitutional requirements. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).

Here, Niblack asserts that prisoners have a legitimate property interest in the funds in their prison accounts.  See Robinson v. Fauver, 932 F. Supp. 639 (D.N.J. 1996).  However, he fails to support the second prong of the two-step due process inquiry because Niblack had a post-deprivation remedy available to him with respect to the debiting of his prison account. Property loss caused by the intentional acts of government officials does not give rise to a procedural due process claim under § 1983 where a post-deprivation remedy satisfying minimum procedural due process requirements is available under state law. See Parratt v. Taylor, 451 U.S. 527 (1981) (overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); see also Zinermon v. Burch, 494 U.S. 113, 115 (1990); Hudson v. Palmer, 468 U.S. 517 (1984); Holman, 712 F.2d at 856.[8]  The New Jersey Tort Claims Act ("NJTCA"), N.J. STAT. ANN. § 59:1-1 et seq., provides a post-deprivation judicial remedy to persons who believe they were deprived of property at the hands of the State or local government.  See  Holman, 712 F.2d at 857; Asquith v.

---

[8]   In Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), the Supreme Court explained, however, that post-deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action.  455 U.S. at 435-36.  But see Tillman v. Lebanon Co. Correctional Facility, 221 F.3d 410, 421 n.12 (3d. Cir. 2000)(citing United States v. James Daneil Good Real Property, 510 U.S. 43, 53 (1993))(in "extraordinary situations" such as routine deduction of fees from a prisoner's account even without authorization, post-deprivation remedies may be adequate).

<u>Volunteers of America</u>, 1 F. Supp.2d 405, 419 (D.N.J. 1998), <u>aff'd</u>
186 F.3d 407 (3d Cir. 1999).

Moreover, the evidence submitted on behalf of defendant
Brooks shows that the money was reimbursed to Niblack's prison
account after it was brought to defendants' attention that there
had been a clerical error in the deductions.  Further, Niblack
has failed to establish any injury as a result of the withdrawal
of funds from his account for the two-month period from October
2009 to December 2009.  At most, Niblack alleges that he was
deprived of basic hygiene necessities and food, and his request
for an indigent package was ignored.[9]  However, the record shows
that Niblack periodically had been loaned money through funds of
the various prisons in which he resided, under such titles as
"Medical Loan," "Legal Copy Loan," "Legal Mail Loan," "Commissary
Loan," and "Pharmacy Loan," (Viera Decl., Ex. B), and that
Niblack received certain of these loans from October 2009 to
December 2009.  (<u>Id</u>., at DOC1197).  Moreover, in his deposition,
Niblack admitted that he never applied for an indigency status
that would have given him the free hygiene materials, and that he
never went without a particular item for more than a week or two.
(Vannella Decl., Ex. A, T125:4-138:25).

_____

[9]  The Court notes that Niblack's Eighth Amendment claim
regarding deprivation of personal hygiene products for two months
was dismissed by this Court's December 28, 2010 Opinion and
Order, because such allegations failed to rise to the level of a
constitutional deprivation.  (<u>See</u> Docket entry nos. 101 and 102).

Therefore, the Court will grant defendant Brooks' motion for summary judgment, and the supplemental Complaint will be dismissed in its entirety as against this defendant.

E.   <u>Claims for Compensatory and Punitive Damages</u>

Because this Court has determined that the defendants are entitled to summary judgment or judgment on the pleadings with respect to all remaining claims in this action, there is no need to address plaintiff's claims for damages.

III.   <u>CONCLUSION</u>

Therefore, for the reasons set forth above, defendants' motion for judgment on the pleadings and/or for summary judgment will be granted, and this action will be dismissed in its entirety with respect to all remaining defendants, NJDOC, NSP, Albino, Ott, Labonne and Brooks.  An appropriate order follows.

/s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

Dated: 9/29/11